UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL G.,[1]<br><br>　　　　Plaintiff<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>　　　　Defendant. | Case No. 5:20-cv-01594-GJS<br><br>**MEMORANDUM, OPINION, AND ORDER** |

## I.　PROCEDURAL HISTORY

Plaintiff Rachel G. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 9 and 10] and briefs addressing disputed issues in the case [Dkt. 16 ("Pltf.'s Br."), Dkt. 19 ("Def. Br."), Dkt. 20 ("Reply")]. The matter is now ready for decision. For the reasons discussed

---

[1]　In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2]　Kilolo Kijakazi, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed for DIB on November 2, 2015, alleging a period of disability beginning August 8, 2012. [AR 363-370.] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge Marti Kirby. [AR 106-128.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). [AR 87-101.] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [AR 89.] At step two, the ALJ found that Plaintiff suffered from the severe impairments including systemic lupus erythematosus, rheumatoid arthritis, chronic pain syndrome, fibromyalgia, lumbago, left lumbar radiculitis, and obesity. [AR 89.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 91.]

Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except:

> she could lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds, or less, frequently; stand and walk 6 hours out of an 8-hour workday; sit for 6 hours out of an 8-hour workday; have the option to sit and/or standing [sic], meaning she would need a job that could be performed from either a seated position or from a standing position so that she can alternate position periodically throughout an 8-hour workday, however, a change in position would not occur more frequently than 20-30 minute intervals; frequently balance; occasionally perform all other postural activities; have no repetitive or constant pushing or pulling with the left lower extremity, such as operating foot pedals; have no fast paced production or assembly line type work; have minimal changes in the work place setting or routine.

[AR 92.] Applying this RFC, the ALJ found that Plaintiff could not return to her past relevant work as a court clerk, but determined that based on her age (50 years old), high school education, and ability to communicate in English, she could perform representative occupations such as routine clerk (Dictionary of Occupational Titles ("DOT") 222.687-022), cashier II (DOT 211.462-010), and information clerk (DOT 237.367-018) and, thus, is not disabled. [AR 99-100.]

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

### IV.   DISCUSSION

The sole issue in dispute is whether the ALJ properly evaluated the reliability

of Plaintiff's statements about her limitations.  Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting her subjective symptom testimony.  [Pltf.'s Br. at 5-18; Reply at 3-4.]  The Court disagrees.

### A.    Plaintiff's Testimony

At the hearing, Plaintiff testified that she cannot work because her lupus causes joint swelling and exhaustion, and her fibromyalgia causes pain in her joints, tendons, and skin. [AR 114.] She feels the pain mostly in her back, knees, legs, ankle, and hands. [AR 114.] Plaintiff testified that due to her medical issues and the side effects from her medications, she began missing work, and was eventually taken off work by her doctor while she recuperated. [AR 112.] About two years before taking medical retirement, Plaintiff was missing about three to five days of work a month. [AR 112-113.] She tried to return to work after taking a leave, but could not meet the physical requirements, experienced fatigue, and had difficulty concentrating. [AR 115.]

When asked about her daily functioning, Plaintiff testified that her husband helps with cooking and cleaning. [AR 116.] He helps clean the floors and he helps with the dishes because Plaintiff has a hard time grasping. [AR 116-117.] Plaintiff used to walk her dog two to three days per week, but she cannot walk as far anymore and she needs help from her husband to lift the dogs into the car. [AR 116.] Plaintiff frequently cancels plans due to pain and she has a poor memory. [AR 118-119.]

Plaintiff's hands swell and she has difficulty gripping at times which makes it difficult for her to blow dry her hair. [AR 117.] Plaintiff described her level of fatigue as a ten. [AR 117.] She has a hard time sleeping at night due to her pain which causes her to take two naps a day due to fatigue. [AR 117.] She often sleeps in a recliner about six nights a week because she has a hard time getting up the stairs because of her symptoms. [AR 118.]

///

### B. Federal Law

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) (internal citations and quotation marks omitted) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4 (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the plaintiff that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, plaintiff's daily activities, the plaintiff's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. [AR

93.] Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.

Here, the ALJ rejected Plaintiff's credibility because (1) her daily activities were inconsistent with her statements about the intensity and persistence of her symptoms; (2) she failed to seek treatment in a manner consistent with her alleged complaints; (3) evidence suggested that she was able to work despite her impairments; and (4) she provided inconsistent statements about her ability to ambulate. [AR 94-95.]

### C. The ALJ's Decision Sets Forth At Least One Clear and Convincing Reason for Rejecting Plaintiff's Credibility

First, in considering Plaintiff's subjective statements about her disabling limitations, the ALJ cited several portions of the medical record demonstrating that Plaintiff did not always follow treatment recommendations and she overall failed to seek treatment consistent with her alleged complaints. [AR 93-94.] The ALJ noted that Plaintiff claimed that she suffered from disabling pain, fatigue, insomnia, alertness, attention, focus and concentration. [AR 93.] But the ALJ found that these subjective complaints were incompatible with her failure to follow treatment recommendations that could resolve these symptoms.

For example, the ALJ noted that, over several visits, Plaintiff's doctor continued to "strongly advise" her to use a "continuous positive airway pressure (CPAP)" machine. [AR 94, 505, 510.] Once Plaintiff began using her CPAP machine daily, her doctor reported that her "sleep is well" with "no mood issues." [AR 518.] Additionally, the ALJ concluded that despite Plaintiff's testimony that she suffers from constant pain with a severity level ranging from "eight to ten" (AR 117), several notations in the record demonstrate that Plaintiff repeatedly refused pain medication. [AR 93-94.] On April 21, 2014, Plaintiff's doctor reported that "she does not take pain medications." [AR 518.] On August 25, 2017, doctors again reported that Plaintiff "doesn't take pain medication in relieving the pain" and

6

the pain specialist noted she did not want pain injections. [AR 94, 1078.] Further, while Plaintiff's doctor continued to prescribe tramadol, Plaintiff took the medication only on rare occasions because it caused "her to feel drugged." [AR 502, 506.] Doctors also prescribed Plaquenil (hydroxychloroquine), which Plaintiff stopped taking due to a change in vision, but as her doctor noted, she self-discontinued the medication without following up with her eye doctor "as instructed." [AR 1156.] Even Plaintiff's treating physician appeared to show some frustration with Plaintiff's failure to seek treatment. In a May 1, 2018, treatment note, Plaintiff's rheumatologist stated Plaintiff "has multiple excuses why she is not making changes to her health for the better" and Plaintiff was "advised AGAIN today to f/u with PMD and PM for pain control." [AR 1152, 1157 (emphasis in original.)]

The Regulations caution claimants that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. §§ 404.1530(a), 416.930(a). If a claimant fails to follow the prescribed treatment without an acceptable reason, the Commissioner "will not find [the claimant] disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). Accordingly, the Ninth Circuit determined, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989. Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a claimant's subjective complaints lack credibility. *Id*.

Here, the ALJ's reliance on Plaintiff's noncompliant treatment history was a clear and convincing reason for finding her less than fully credible. While Plaintiff explains that she failed to comply with her treatment plan because the medication made her lethargic, that does not account for her initial failure to use her CPAP machine, nor her decision to self-discontinue her medication rather than follow-up

7

with her eye doctor as instructed. [AR 115, 399.] Accordingly, there was no error in the ALJ's conclusion that Plaintiff had an inadequate reason for pursuing less aggressive treatment. [AR 94.] This is a significant finding because, as seen above, Plaintiff relates many on her disabling complaints to fatigue and pain. Plaintiff's failure to comply with treatment directly related to the primary causes of her work-related disability casts significant doubt on Plaintiff's argument that her claims of disabling conditions are not exaggerated. Like in *Burch*, the evidence of record here does not provide strong support to establish that Plaintiff's fatigue and pain was severe enough to motivate her to seek additional treatment or follow the prescribed course of treatment. Because Plaintiff failed to comply with her treatment—as the ALJ observed—this factor supports the adverse credibility determination.

Second, as the ALJ acknowledged, a Plaintiff's prior work history and reasons for job loss are legitimate factors in evaluating credibility. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms .... We will consider all of the evidence presented, including information about your prior work record"); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (fact the claimant lost two jobs for reasons other than pain was an appropriate consideration in the credibility analysis); *see also Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (plaintiff's job search efforts discredited his allegations of disability); *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (fact that a claimant has sought out employment weighs against a finding of disability); *but see Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("That Webb sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself").

The ALJ observed that Plaintiff was first diagnosed in 2000 (see AR 398) and yet continued to work for over a decade after that. [AR 94.] Additionally, over that

twelve-year history, "the medical evidence and other evidence of record" did not demonstrate that Plaintiff's symptoms significantly worsened over time. [AR 94.] Specifically, the ALJ noted that, on November 6, 2012 (after the onset date), Plaintiff's condition was noted as stable and she requested clearance to return to work. [AR 94.] Plaintiff ultimately returned to work "for a week", however, on March 29, 2013, Plaintiff requested permanent disability status, noting that her position had been eliminated. [AR 94, 473.] At the hearing, Plaintiff did not address the elimination of her position, but she testified that, after returning to work for a week, she realized that she "physically could not sit" and perform the functions required for her position. [AR 115.] In reviewing this evidence, the ALJ found that Plaintiff's work history suggested that her symptoms were not completely disabling.

      Here, Plaintiff's continued work for over ten-years after the onset of her symptoms coupled with the fact that she attempted to work after her alleged onset date constituted a sufficient reason for the ALJ to find Plaintiff's testimony less than credible. *See Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) ("[S]ubstantial evidence indicated that the condition of [plaintiff's] back had remained constant for a number of years and that her back problems had not prevented her from working over that time."). The ALJ pointed to evidence in the record that Plaintiff's symptoms did not prevent her from working, including a note in October 2015 where Plaintiff reported having constant severe symptoms since October 2011, before her onset date. [AR 94, 922-923.] Moreover, although Plaintiff testified that she stopped working solely based on her impairments, that ALJ was also entitled to rely on evidence indicating that Plaintiff may have been seeking disability for reasons other than her impairments (i.e. her job was being eliminated). While Plaintiff argues that the ALJ should have weighed the conflicting evidence differently, the Court "may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

      Third, the ALJ also appropriately found that Plaintiff offered inconsistent

statements about the extent of her limitations. [AR 94.] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony"). The ALJ found that despite Plaintiff's allegations that she had difficulty walking because of pain, a medical history note from January 23, 2018 indicated that Plaintiff inverted her ankle while walking in high wedge shoes in the parking lot of a restaurant. [AR 95, 819, 1147.] The ALJ found Plaintiff's ability to travel to restaurants wearing high-heels incompatible with her allegations of difficulty walking. [AR 23.] The ALJ further supported his position by pointing to other evidence in the record demonstrating that Plaintiff had no lower calf tenderness or lower extremity edema and medical examinations showed she generally had a normal gait. [AR 95.]

Although it may appear minor, the extent of Plaintiff's elective activities and choice of footwear supports the ALJ's conclusion that Plaintiff was less than fully credible when reporting the severity of her alleged disabling functional limitations. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (*citing Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)). Accordingly, the ALJ did not err in finding that Plaintiff was less than truthful based on the inconsistencies in her statements, as these obvious discrepancies are sufficient to support discounting Plaintiff's s subjective symptom allegations.

Given the above, the Court need not address whether the ALJ's treatment of Plaintiff's daily activities was a valid reason to reject Plaintiff's credibility because even assuming that it was not, any error was harmless in light of the other legally sufficient reasons for the ALJ's determination. *Id.* at 1115 (where one or more

10

reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. *See Smolen*, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. *See Fair*, 885 F.2d at 604. The above reasons constitute clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and functionality.

Accordingly, reversal is not warranted based on the ALJ's consideration of Plaintiff's testimony regarding the nature and severity of her symptoms.

**IT IS SO ORDERED.**

DATED: March 29, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE